(Slip Opinion) OCTOBER TERM, 2010 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## FOX *v.* VICE, AS EXECUTRIX OF THE ESTATE OF VICE, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 10–114.   Argued March 22, 2011—Decided June 6, 2011

Claiming that he was subjected to dirty tricks during his successful campaign to become the police chief of Vinton, La., petitioner Fox filed a state-court suit against Vice, the incumbent chief, and the town (Vice, for short).  Fox's suit asserted both state-law claims, including defamation, and federal civil rights claims under 42 U. S. C. §1983, including interference with Fox's right to seek public office. Vice removed the case to federal court based on the §1983 claims.  After discovery, he sought summary judgment on the federal claims, which Fox conceded were not valid.  The District Court accordingly dismissed them with prejudice and remanded the remaining claims to state court, noting that Vice's attorneys' work could be useful in the state-court proceedings.  Vice then asked the federal court for attorney's fees under §1988, submitting attorney billing records estimating the time spent on the entire suit, without differentiating between time spent on the now-dismissed federal claims and on the remaining state claims.  The court granted the motion on the ground that Fox's federal claims were frivolous, awarding Fox fees for all work his attorneys had performed in the suit.  Although the state-law allegations had not been found frivolous, the court did not require Vice to separate out the work the attorneys had done on the two sets of claims.  It also declined to reduce the fee award to reflect the surviving state-law claims, noting that both sides had focused on the frivolous §1983 claims.  The Fifth Circuit affirmed, rejecting Fox's argument that every claim in a suit must be frivolous for the defendant to recover any fees, and agreeing with the District Court that the litigation had focused on the frivolous federal claims.

Syllabus

*Held*:

    1. When a plaintiff's suit involves both frivolous and non-frivolous claims, a court may grant reasonable fees to the defendant, but only for costs that the defendant would not have incurred but for the frivolous claims. Pp. 5–11.

    (a) Section 1988 allows the award of "a reasonable attorney's fee" to "the prevailing party" in certain civil rights cases, including §1983 suits. While most of this Court's §1988 decisions have concerned fees to prevailing plaintiffs, §1988 also authorizes a fee award to a prevailing defendant "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Christiansburg Garment Co.* v. *EEOC*, 434 U. S. 412, 421. Just as plaintiffs may receive fees under §1988 even if they are not victorious on every claim, *Hensley* v. *Eckerhart*, 461 U. S. 424, 435, so too may a defendant be reimbursed for costs under §1988 even if the plaintiff's suit is not wholly frivolous, *ibid.,* n. 10. The defendant is not entitled to fees arising from these non-frivolous charges, see *Christiansburg,* 434 U. S., at 420–421, but the presence of reasonable allegations does not immunize the plaintiff against paying for the fees that his frivolous claims imposed. Pp. 5–7.

    (b) The question then becomes how to allocate fees in a lawsuit having both frivolous and non-frivolous claims. Congress's purpose in enacting §1988—to relieve defendants of the burdens associated with fending off frivolous litigation—points to the proper standard: Section 1988 allows a defendant to recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim; *i.e.,* §1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim. A standard allowing more expansive fee-shifting would furnish windfalls to some defendants, who would be relieved of normal litigation costs merely because the plaintiff's suit also included frivolous claims. This "but-for" standard may, in some instances, allow compensation to a defendant for attorney work relating to both frivolous and non-frivolous claims, for instance, if the frivolous claim requires a lawyer to do more work because of the defendant's greater financial exposure on that claim. The dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation. The answers to those inquiries will usually track each other, but when they diverge, it is the second one that matters. The determination of fees "should not result in a second major litigation." *Hensley*, 461 U. S., at 437. The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection. The trial court has wide discretion, but must apply the correct but-for standard. And the appeals court must

Syllabus

determine whether the trial court asked and answered this but-for question, rather than some other. Pp. 7–11.

    2. The lower courts used an incorrect standard in awarding fees to Vice. The District Court's analysis suggests that Vice's attorneys would have done much the same work even if Fox had not brought his frivolous claims. The charges arose out of Vice's conduct in the campaign, and with respect both to the frivolous federal claims and to the non-frivolous state-law claims, his "defense entailed proof or denial of essentially the same facts." It thus seems likely that Vice's attorneys would have, *e.g.,* taken many of the same depositions. Although the District Court noted the usefulness of the attorneys' work in defending against the state-law claims, it failed to take proper account of the overlap between the frivolous and non-frivolous claims. Its reasoning—that the close relationship between the federal and state-law claims supported the award—cannot be squared with the congressional policy of sparing defendants from the costs only of frivolous litigation. Nor did the Fifth Circuit uphold the award on the proper ground. It seemed to think Vice could receive fees for any work useful to defending against a frivolous claim, even if his lawyers would have done that work regardless. On this record, the case must be returned to the lower courts. Pp. 12–13.

594 F. 3d 423, vacated and remanded.

    KAGAN, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 10–114

_____

RICKY D. FOX, PETITIONER *v.* JUDY ANN VICE, AS EXECUTRIX OF THE ESTATE OF BILLY RAY VICE, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[June 6, 2011]

JUSTICE KAGAN delivered the opinion of the Court.

Federal law authorizes a court to award a reasonable attorney's fee to the prevailing party in certain civil rights cases. See 42 U. S. C. §1988. We have held that a defendant may receive such an award if the plaintiff's suit is frivolous. In this case, the plaintiff asserted both frivolous and non-frivolous claims. We hold today that a court may grant reasonable fees to the defendant in this circumstance, but only for costs that the defendant would not have incurred but for the frivolous claims. A trial court has wide discretion in applying this standard. But here we must vacate the judgment below because the court used a different and incorrect standard in awarding fees.

I

This case arises out of an election for chief of police in the town of Vinton, Louisiana. The candidates were petitioner Ricky Fox (the challenger) and respondent Billy Ray Vice (the incumbent).[1] By Fox's account, Vice resorted to

_____

[1] Vice died during the course of this litigation. Pursuant to this Court's Rule 35.1, we substituted the executor of his estate as respondent. 562 U. S. \_\_\_ (2011). But for the sake of clarity, we refer to the

an assortment of dirty tricks to try to force Fox out of the race. In particular, Vice sent an anonymous letter to Fox threatening to publish damaging charges against him if he remained a candidate. Vice also arranged for a third party to publicly accuse Fox of using racial slurs and then to file a criminal complaint against Fox repeating those allegations. And when prosecutors ignored that faux complaint, Vice leaked it to the press. Yet all of these machinations failed; Fox won the election. And Vice got an even greater comeuppance: He was subsequently convicted of criminal extortion for his election-related conduct.

Fox, however, chose not to let the matter rest; he filed this suit in Louisiana state court against Vice and the town of Vinton, also a respondent here. Fox's complaint asserted both state-law claims, including defamation, and federal civil rights claims under 42 U. S. C. §1983, including interference with his right to seek public office. Vice and the town (Vice, for short) removed the case to federal court on the basis of the §1983 claims.

At the end of discovery in the suit, Vice moved for summary judgment on Fox's federal claims. Fox conceded that the claims were "no[t] valid," App. 169, and the District Court accordingly dismissed them with prejudice. In the same ruling, the court declined to exercise supplemental jurisdiction over the remaining state-law claims. Docket No. 2:06–cv–135 (WD La., Oct. 16, 2007), App. to Pet. for Cert. 38a–40a. The court instead remanded the now slimmed-down case to state court for adjudication. In doing so, the District Court observed that "[a]ny trial preparation, legal research, and discovery may be used by the parties in the state court proceedings." *Id.,* at 40a.

Vice then asked the federal court for an award of attorney's fees under §1988, arguing that Fox's federal claims were "baseless and without merit." App. 198. Vice stated

--------

respondent as Vice.

that his lawyers had had to participate in five lengthy depositions and review numerous records to defend against Fox's charges. *Id.,* at 199. In support of his fee request, Vice submitted attorney billing records estimating the time spent on the whole suit, without differentiating between the federal and state-law claims. See Supp. App. 8–67.

The District Court granted the motion for attorney's fees on the ground that Fox's federal claims were frivolous. Although the state-law allegations had not been found frivolous (and indeed remained live), the court did not require Vice to separate out the work his attorneys had done on the two sets of claims. Docket No. 2:06–cv–135 (WD La., Sept. 22, 2008), App. to Pet. for Cert. 28a. According to the court, such "segregation" was unnecessary because the "various claims arose out of the same transaction and were so interrelated that their prosecution or defense entailed proof or denial of essentially the same facts." *Ibid.* (internal quotation marks omitted). Similarly, the court declined to reduce the fee award to reflect the surviving state-law claims. "[T]hroughout the litigation," the court stated, both sides "focus[ed]" on Fox's frivolous §1983 claims. *Id.,* at 32a–33a. The court therefore concluded that Vice should receive all of the fees he reasonably incurred in defending the suit—a total of $48,681. *Id.,* at 34a.

A divided Court of Appeals affirmed. 594 F. 3d 423 (CA5 2010). The majority first rejected Fox's contention that all claims in a suit must be frivolous for the defendant to recover any fees. That rule, the court explained, would "'allow plaintiffs to prosecute frivolous claims without consequenc[e]'" so long as they added a single non-frivolous claim. *Id.,* at 428 (quoting *Tutor-Saliba Corp.* v. *Hailey,* 452 F. 3d 1055, 1064 (CA9 2006)). The Court of Appeals then turned to the District Court's decision that Vice was entitled to fees for all time thus far spent on the

case, even though state-law claims remained unadjudi-
cated. Repeating the trial court's view that the whole
litigation had focused on the frivolous federal claims, the
Fifth Circuit upheld the fee award. See 594 F. 3d, at 428.

Judge Southwick dissented. He agreed that Vice was
entitled to some reimbursement for fees. *Id.,* at 430. But
he thought the District Court had erred in declining to
"allocate the fees separately between the successful claims
and the unsuccessful" ones just because all of them were
"interrelated." *Ibid.* "[W]hen some claims are dismissed
as frivolous and others are not," he stated, the defendants
should receive fees only for "the legal work allocable solely
or dominantly to the dismissed" claims. *Id.,* at 431. Be-
cause in this case "almost all of the defendant[s'] discovery
and factual analysis would have been necessary even if no
federal claims had been brought," he concluded, the fee
award should have been much smaller. *Ibid.*

The Fifth Circuit's decision deepened a Circuit split
about whether and to what extent a court may award fees
to a defendant under §1988 when a plaintiff asserts both
frivolous and non-frivolous claims.[2] One Court of Appeals
has forbidden any compensation unless all of the plaintiff's
claims are frivolous. See *Balmer* v. *HCA, Inc.*, 423 F. 3d
606, 617 (CA6 2005). Others have rejected this approach,
but struggled with how to allocate fees in a suit that in-
volves a mix of frivolous and non-frivolous claims. Com-
pare, *e.g.,* 594 F. 3d 423 (CA5 2010) (opinion below), with
*Colombrito* v. *Kelly*, 764 F. 2d 122, 132 (CA2 1985) (declin-
ing to award fees when the frivolous claim "added no
additional testimony or expense to the trial"). We granted

—————

[2] The parties do not dispute for purposes of argument here that this
case involves both kinds of claims. The District Court deemed the
federal claims frivolous, and Fox has not asked us to disturb that
ruling. See Brief for Petitioner 26, and n. 2. The court remanded the
state-law claims to state court, and Vice has assumed in this Court that
they are not frivolous. See Brief for Respondents 8, n. 5.

certiorari to resolve these questions.  562 U. S. \_\_\_ (2010).

## II

Our legal system generally requires each party to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses.  Indeed, this principle is so firmly entrenched that it is known as the "American Rule."  See *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240, 247 (1975).  But Congress has authorized courts to deviate from this background rule in certain types of cases by shifting fees from one party to another.  See *Burlington* v. *Dague*, 505 U. S. 557, 562 (1992) (listing federal fee-shifting provisions).

The statute involved here, 42 U. S. C. §1988, allows the award of "a reasonable attorney's fee" to "the prevailing party" in various kinds of civil rights cases, including suits brought under §1983.  Most of our decisions addressing this provision have concerned the grant of fees to prevailing plaintiffs.  When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves "as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority."  *Newman* v. *Piggie Park Enterprises, Inc.*, 390 U. S. 400, 402 (1968) *(per curiam)*.  He therefore "should ordinarily recover an attorney's fee" from the defendant—the party whose misconduct created the need for legal action.  *Christiansburg Garment Co.* v. *EEOC*, 434 U. S. 412, 416 (1978) (internal quotation marks omitted).  Fee shifting in such a case at once reimburses a plaintiff for "what it cos[t] [him] to vindicate [civil] rights," *Riverside* v. *Rivera*, 477 U. S. 561, 577–578 (1986) (internal quotation marks omitted), and holds to account "a violator of federal law," *Christiansburg*, 434 U. S., at 418.

In *Christiansburg*, we held that §1988 also authorizes a fee award to a prevailing defendant, but under a different standard reflecting the "quite different equitable consid-

erations" at stake. *Id.,* at 419. In enacting §1988, we stated, Congress sought "to protect defendants from burdensome litigation having no legal or factual basis." *Id.,* at 420. Accordingly, §1988 authorizes a district court to award attorney's fees to a defendant "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Id.,* at 421; see also *Kentucky* v. *Graham*, 473 U. S. 159, 165, n. 9 (1985).

These standards would be easy to apply if life were like the movies, but that is usually not the case. In Hollywood, litigation most often concludes with a dramatic verdict that leaves one party fully triumphant and the other utterly prostrate. The court in such a case would know exactly how to award fees (even if that anti-climactic scene is generally left on the cutting-room floor). But in the real world, litigation is more complex, involving multiple claims for relief that implicate a mix of legal theories and have different merits. Some claims succeed; others fail. Some charges are frivolous; others (even if not ultimately successful) have a reasonable basis. In short, litigation is messy, and courts must deal with this untidiness in awarding fees.

Given this reality, we have made clear that plaintiffs may receive fees under §1988 even if they are not victorious on every claim. A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes. That "result is what matters," we explained in *Hensley* v. *Eckerhart*, 461 U. S. 424, 435 (1983): A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if "the plaintiff failed to prevail on every contention." *Ibid.* The fee award, of course, should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief: Such work "cannot be deemed to have been expended in pursuit of the ultimate result achieved."

*Ibid.* (internal quotation marks omitted). But the presence of these unsuccessful claims does not immunize a defendant against paying for the attorney's fees that the plaintiff reasonably incurred in remedying a breach of his civil rights.

Analogous principles indicate that a defendant may deserve fees even if not all the plaintiff's claims were frivolous. In this context, §1988 serves to relieve a defendant of expenses attributable to frivolous charges. The plaintiff acted wrongly in leveling such allegations, and the court may shift to him the reasonable costs that those claims imposed on his adversary. See *Christiansburg*, 434 U. S., at 420–421. That remains true when the plaintiff's suit also includes non-frivolous claims. The defendant, of course, is not entitled to any fees arising from these non-frivolous charges. See *ibid.* But the presence of reasonable allegations in a suit does not immunize the plaintiff against paying for the fees that his frivolous claims imposed.

Indeed, we have previously said exactly this much. In *Hensley*, we noted the possibility that a plaintiff might prevail on one contention in a suit while also asserting an unrelated frivolous claim. In this situation, we explained, a court could properly award fees to both parties—to the plaintiff, to reflect the fees he incurred in bringing the meritorious claim; and to the defendant, to compensate for the fees he paid in defending against the frivolous one. See 461 U. S., at 435, n. 10. We thus made clear that a court may reimburse a defendant for costs under §1988 even if a plaintiff's suit is not wholly frivolous. Fee-shifting to recompense a defendant (as to recompense a plaintiff) is not all-or-nothing: A defendant need not show that every claim in a complaint is frivolous to qualify for fees.

The question then becomes one of allocation: In a lawsuit involving a mix of frivolous and non-frivolous claims,

what work may the defendant receive fees for?  Vice concedes, as he must, that a defendant may not obtain compensation for work unrelated to a frivolous claim.  Brief for Respondents 42, n. 13.  Similarly, we think Fox would have to concede (once he has lost the argument that the presence of any non-frivolous claim precludes a fee award) that the defendant may receive reasonable fees for work related exclusively to a frivolous claim.  The question in dispute concerns work that helps defend against non-frivolous and frivolous claims alike—for example, a deposition eliciting facts relevant to both allegations.

Vice proposes authorizing the trial court to award fees for work that is "fairly attributable" to the frivolous portion of the lawsuit.  See, *e.g.,* Tr. of Oral Arg. 41, 45.  But that standard is in truth no standard at all.  The very question under consideration is: What fees may be fairly attributed to frivolous claims under §1988?  To answer "Those that are fairly attributable to frivolous claims" is just to restate this question.  And that non-response response would leave to each and every trial court not only the implementation, but also the invention, of the applicable legal standard.  We do not think trial courts would appreciate that lack of guidance.  And yet more important, we do not think such an empty and amorphous test would ensure that all fee awards to defendants comport with Congress's purpose in enacting §1988.

That congressional policy points to a different and more meaningful standard: Section 1988 allows a defendant to recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim.  Or what is the same thing stated as a but-for test: Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim.  Recall that the relevant purpose of §1988 is to relieve defendants of the burdens associated with fending off frivolous litigation.  See *supra*, at 5–6.  So if a frivolous claim occasioned

the attorney's fees at issue, a court may decide that the defendant should not have to pay them. But if the defendant would have incurred those fees anyway, to defend against *non*-frivolous claims, then a court has no basis for transferring the expense to the plaintiff. Suppose, for example, that a defendant's attorney conducts a deposition on matters relevant to both a frivolous and a non-frivolous claim—and more, that the lawyer would have taken and committed the same time to this deposition even if the case had involved only the non-frivolous allegation. In that circumstance, the work does not implicate Congress's reason for allowing defendants to collect fees. The defendant would have incurred the expense in any event; he has suffered no incremental harm from the frivolous claim. In short, the defendant has never shouldered the burden that Congress, in enacting §1988, wanted to relieve. The basic American Rule thus continues to operate.[3]

A standard allowing more expansive fee-shifting would furnish windfalls to some defendants, making them better off because they were subject to a suit including frivolous claims. For under any more permissive test, the simple presence of a frivolous claim would allow the court to shift

———————

[3] The test set out here differs from the one we adopted in *Hensley* v. *Eckerhart*, 461 U. S. 424, 435 (1983), to govern fee awards to plaintiffs in cases involving both successful and unsuccessful claims. See *supra*, at 6–7. That difference reflects the disparate legislative purposes we have recognized in the two settings. See *Christiansburg Garment Co.* v. *EEOC*, 434 U. S. 412, 419–420 (1978); *supra*, at 5–6. Congress authorized fees to plaintiffs to compensate them for the costs of redressing civil rights violations; accordingly, a plaintiff may receive fees for all work relating to the accomplishment of that result, even if "the plaintiff failed to prevail on every contention raised." *Hensley*, 461 U. S., at 435. By contrast, Congress authorized fees to defendants to remove the burden associated with fending off frivolous claims; accordingly, a defendant may recover for fees that those claims caused him to incur. In each context, the standard for allocating fees in "mixed" cases matches the relevant congressional purpose.

to the plaintiff some of the costs of defending against regular, non-frivolous charges.  So two defendants (call them Vice and Rice) could face identical non-frivolous allegations, but because Vice also confronted a frivolous claim, he might end by paying less than Rice to his attorneys.  The chance assertion—for Vice, the downright lucky assertion—of the frivolous claim could relieve him not only of the incremental costs of that claim but also of costs that he, like Rice, would have had to pay in its absence.  Section 1988 provides no warrant for that peculiar result; that statute was "never intended to produce windfalls" for parties.  See *Farrar* v. *Hobby*, 506 U. S. 103, 115 (1992) (internal quotation marks omitted).

At the same time, the "but-for" standard we require may in some cases allow compensation to a defendant for attorney work relating to both frivolous and non-frivolous claims.  Suppose, for example, that a plaintiff asserts one frivolous and one non-frivolous claim, but that only the frivolous allegation can legally result in a damages award.  If an attorney performs work useful to defending against both, but did so only because of the defendant's monetary exposure on the frivolous charge, a court may decide to shift fees.  Or similarly, imagine that the frivolous claim enables removal of the case to federal court, which in turn drives up litigation expenses.  Here too, our standard would permit awarding fees for work relevant to both claims in order to reflect the increased costs (if any) of the federal forum.  And frivolous claims may increase the cost of defending a suit in ways that are not reflected in the number of hours billed.  If a defendant could prove, for example, that a frivolous claim involved a specialized area that reasonably caused him to hire more expensive counsel for the entire case, then the court may reimburse the defendant for the increased marginal cost.  As all these examples show, the dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but

whether the costs would have been incurred in the absence of the frivolous allegation. The answers to those inquiries will usually track each other, but when they diverge, it is the second that matters.

We emphasize, as we have before, that the determination of fees "should not result in a second major litigation." *Hensley*, 461 U. S., at 437. The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." *Ibid.* But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation." *Ibid.;* see *Webb* v. *Dyer County Bd. of Ed.*, 471 U. S. 234, 244 (1985). We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it.

But the trial court must apply the correct standard, and the appeals court must make sure that has occurred. See *Perdue* v. *Kenny A.*, 559 U. S. ___, ___ (2010) (slip op., at 14) ("Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge, . . . but the judge's discretion is not unlimited"); Cf. *Koon* v. *United States*, 518 U. S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law"). That means the trial court must determine whether the fees requested would not have accrued but for the frivolous claim. And the appeals court must determine whether the trial court asked and answered that question, rather than some other. A trial court has wide discretion when, but only when, it calls the game by the right rules.

### III

The task remains of applying these principles to the fee award Vice received. The District Court's analysis suggests that Vice's attorneys would have done much the same work even if Fox had not brought his frivolous claims. As noted earlier, see *supra*, at 3, the court acknowledged that Fox's federal and state-law claims were "interrelated," App. to Pet. for Cert. 28a (internal quotation marks omitted). The charges "arose out of the same transaction"—Vice's conduct in the campaign—and their "defense entailed proof or denial of essentially the same facts." *Ibid.* (internal quotation marks omitted). It therefore seems likely that Vice's attorneys would at least have conducted similar fact-gathering activities—taken many of the same depositions, produced and reviewed many of the same documents, and so forth. Indeed, the District Court highlighted the usefulness of the attorneys' work to defending against the state-law claims: In its order remanding those claims, the court noted that the "trial preparation, legal research, and discovery" done in the federal court could "be used by the parties in the state court proceedings." *Id.*, at 40a.

The District Court's decision to award full attorney's fees to Vice failed to take proper account of this overlap between the frivolous and non-frivolous claims. Rather than apply the but-for standard we have set out, the court indicated that the paramount factor was the parties' "focus" in the litigation. *Id.*, at 33a. The court did not address whether the "interrelated[ness]" of the claims meant that Vice would have incurred part or most of his fees even if Fox had asserted only the non-frivolous state-law claims. To the contrary, the court suggested that the close relationship between the federal and state-law claims supported Vice's request to recover *all* of his attorney's fees. See *id.*, at 28a; *supra*, at 3. That reasoning stands the appropriate analysis on its head. It cannot be squared

with the congressional policy of sparing defendants from the costs of *frivolous* litigation.

Nor did the Court of Appeals uphold the award of fees on the ground that we would require. The majority articulated a standard that, taken alone, might be read as consistent with our opinion; according to the court, a defendant should receive fees for "work which can be distinctly traced to a plaintiff's frivolous claims." 594 F. 3d, at 429. But the court seemed to think that its test permitted awarding Vice fees for any work useful to defending against a frivolous claim, even if lawyers would have done that work regardless. Indeed, this very point divided the majority and the dissent. Judge Southwick objected to the fee award on the ground that "almost all [of] the defendant[s'] discovery and factual analysis would have been necessary even if no federal claims had been brought." *Id.,* at 431. But the majority never responded to that argument or otherwise engaged this crucial question. The majority instead merely reiterated the District Court's reasoning that the parties had principally "focus[ed]" on the §1983 allegations. That finding, as we have explained, is irrelevant if Vice's attorneys would have performed the same work to defend against the state-law claims.

On this record, we must return the case to the lower courts. See, *e.g., Perdue*, 559 U. S., at \_\_\_–\_\_\_ (slip op., at 12–15); *Pennsylvania* v. *Delaware Valley Citizens' Council for Clean Air*, 478 U. S. 546, 566–568 (1986); *Hensley*, 461 U. S., at 438–440. In a suit of this kind, involving both frivolous and non-frivolous claims, a defendant may recover the reasonable attorney's fees he expended solely because of the frivolous allegations. And that is all. Consistent with the policy underlying §1988, the defendant may not receive compensation for any fees that he would have paid in the absence of the frivolous claims. We therefore vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*